UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN PORTER

                              Plaintiff,

                                                    CIVIL CASE NO. 06-14037

v.

                                                     HONORABLE PAUL V. GADOLA

BRIAN REX, *et al.*,                             U.S. DISTRICT COURT

                                  Defendants.
_____/

## **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On August 25, 2006, Plaintiff Christian Porter originally filed the instant case against defendants Brian Rex, Matthew Butzky and Alex McVicar in the Washtenaw County Circuit Court alleging state torts and constitutional violations under 42 U.S.C. § 1983. The case was removed to this Court on September 13, 2006. The Court remanded the state claims and retained the Fourth Amendment claim.

Before the Court is Defendants' motion for summary judgment filed on June 30, 2007.

**I.    Background[1]**

The following facts are not in dispute. On August 28, 1994, Plaintiff was a passenger in the back seat, passenger-side, of his own Dodge Magnum, traveling with three other persons in the car. At approximately 10:20 p.m., Deputy Butzky of the Washtenaw County Sheriff's Department noticed Porter's vehicle weaving through traffic and speeding, clocking it on radar at 115 miles per

---

[1] Because this is a motion for summary judgment, the Court sets forth the facts taken in a light most favorable to the non-moving party, the plaintiff. *See* 60 *Ivy St. Corp. v. Alexander*, 822 F.2d 1432 (6th Cir. 1987).

hour. Butzky stopped the car to question the driver. Butzky spoke with the driver, Calvin Butler, informed him of his speed, and directed him to step out of the car. When Butzky questioned Butler, Butler gave false answers about his middle name, social security number, and year of birth. Butler also advised Butzky that he had a valid driver's license but that he did not have it with him. Butzky ultimately learned from the dispatcher that a valid warrant existed for Butler. Butzky arrested Butler for having no operator's license on his person and for reckless driving. Butzky handcuffed Butler and placed him in the rear of his patrol vehicle.

Butzky then requested that Rodney Bragg, the passenger sitting behind the driver, exit the vehicle. Bragg was placed in the rear of Butzky's patrol vehicle. Butzky called for another patrol unit to assist him in searching Plaintiff's vehicle. Deputy Brian Rex, along with several other officers arrived.

Butzky then approached the passenger's side of Plaintiff's vehicle. Kent Drew was sitting in the front seat and Plaintiff was sitting in the back seat, directly behind Drew. Butzky directed Plaintiff to exit the vehicle, but Plaintiff stayed in the vehicle. Plaintiff admits that he "did not immediately comply with Deputy Butzky's request to leave [the] car. . . ." Pl's Resp., Ex 1. Aff. of Pl., p. 3. Deputy Butzky claims that despite repeatedly asking Plaintiff to exit the vehicle, Plaintiff responded with statements such as, "I'm not giving you permission to search the car," "Where is your probable cause," "I'm not resisting," "I don't want to give up my rights if I didn't do anything," and "I'm not trying to be difficult." (Def's Br, p. 2; Def's Mot, Ex. 3, Patrol Car Video). Butzky alleges that he informed Plaintiff that it was lawful for him to search the car because a misdemeanor had occurred in his presence. Butzky again asked Plaintiff to step out of the car. Plaintiff repeated

2

that he did not give the Deputies permission to search his car. Deputy Rex indicated that if Plaintiff "did not get out of the car, he would spray [Plaintiff] with mace and break the window of [Plaintiff's] new car." Pl's Resp., Ex 1. Aff. of Pl., p. 4. Nevertheless, Plaintiff "pleaded" with the deputies to answer Plaintiff's questions and explain his rights. *Id.* Defendants allege that Porter then began to turn toward the center of the back seat. Plaintiff claims he was turning away to unbuckle his seat belt. Butzky reached into the car and attempted to pull Plaintiff out by his arm. Rex then attempted to assist Butzky by reaching for Plaintiff's other arm. Plaintiff claims that the deputies "pulled [Plaintiff] out of the backseat of [Plaintiff's] car without a struggle or resistance." *Id.* At this point, Drew intervened and began a scuffle with Rex and, at one point, Drew had Deputy Rex pinned on the ground. Butzky handcuffed Porter and then went to assist Rex in subduing Drew. Once Drew was subdued, Plaintiff was placed in the back seat of Deputy Rex's patrol car.

After all the occupants of the Dodge vehicle were secured, Plaintiff alleges that Butler and Bragg were beaten in the head by Deputy McVicar while Butler and Bragg were locked in Butzky's patrol car. Plaintiff claims that he attempted to hide from Deputy McVicar by lying down in the back of Rex's vehicle. Plaintiff asserts that McVicar then sought him out, "opened the rear door and leaned inside and forcefully shoved his billy club under [Plaintiff's] chin and stated, 'I'm going to kill you nigger.'" *Id.* at 5. Plaintiff was taken to the police station and charged with felonious Resisting and Obstructing a Police Officer. *Id.* at 6.

Plaintiff claims that he had an October 20, 2004, preliminary examination in state court as to the charge against him. *Id*. Plaintiff also claims that at this preliminary examination, the assistant prosecuting attorney amended the felony charge to a misdemeanor charge of Attempting to Resist

3

and Obstruct a Police Officer. *Id.* The case ultimately proceed to trial in the State of Michigan District Court 14B, and on April 29, 2005, Plaintiff was acquitted by a jury. *Id.*

## II. Legal Standard

Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

4

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

5

## III. Analysis

Plaintiff's complaint alleges that Defendants acted under color of state law to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendment in violation of 42 U.S.C. § 1983. Plaintiff premises his civil rights claim on allegations of arrest without probable cause and the use of excessive force by the officers. Defendants argue that they are entitled to summary judgment with respect to these § 1983 claims for several reasons. First, Defendants insist that Plaintiff is collaterally estopped from litigating the issue of arrest without probable cause because he had a full and fair opportunity to litigate the issue in state court. Second, Defendants assert that the force applied to effect Plaintiff's arrest was reasonable and did not amount to a constitutional violation. Finally, Defendants argue in the alternative that qualified immunity shields them from Plaintiff's § 1983 claims.

### A. Probable Cause

Defendants argue that Plaintiff is collaterally estopped from asserting that no probable cause to arrest Plaintiff existed because a determination of probable cause was made at the preliminary examination. Michigan Court Rules on preliminary examinations state:

> If, after considering the evidence, the court determines that probable cause exists to believe both that an offense not cognizable by the district court has been committed and that the defendant committed it, the court must bind the defendant over for trial. If the court finds probable cause to believe that the defendant has committed an offense cognizable by the district court, it must proceed thereafter as if the defendant initially had ben charged with that offense.

MCR 6.110(E).

Furthermore,

> For purposes of preliminary examination, the proofs adduced must only establish probable cause to believe that a crime was committed and probable cause to believe that the defendant committed it.

*People v. Goecke*, 457 Mich. 442, 469; 579 N.W.2d 868, 881 (1998).

In the present case, Plaintiff admits that he had a preliminary examination on October 20, 2004. Then, on April 29, 2005, Plaintiff admittedly went to trial on a misdemeanor charge. The trial ultimately resulted in a not-guilty verdict. Accordingly, in order for the charges to proceed to trial in the district court, the preliminary examination must have resulted in a finding that there was "probable cause to believe that the defendant has committed an offense cognizable by the district court. . ." MCR 6.110(E). As a result of this preliminary examination and the determination of probable cause, Plaintiff is collaterally estopped from now raising an argument that the arrest was made without probable cause. *See White v. Tamlyn*, 961 F. Supp. 1047, 1054-55 (E.D. Mich. 1997). Accordingly, the Court can find no constitutional violation by the officers with respect to Plaintiff's claim of lacking probable cause at the time of the arrest.

Furthermore, even absent a finding that Plaintiff is estopped from asserting that the Defendants lacked probable cause for the arrest, examining the facts in light most favorable to the non-moving Plaintiff, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether the officers had probable cause to arrest Plaintiff. Probable cause exists when the "facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' " *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (*quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223,

13 L.Ed.2d 142 (1964)).

In the present case, once the officers made the traffic stop, they were lawfully allowed to order all of the passengers out of the car pending the completion of the stop. *See Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997). Although Plaintiff maintains that he "never refused or intended to refuse any directive from any officer," Pl's Resp., Ex 1. Aff. of Pl., p. 3, his own affidavit plainly contradicts that assertion. Plaintiff does not dispute that Butzky repeatedly asked Plaintiff to exit the vehicle. Nevertheless, Plaintiff freely admits that he "did not immediately comply" with the requests. *Id.* at 4. Furthermore, Plaintiff indicates that he "pleaded" with the deputies while they were requesting him to exit the vehicle. Ultimately, Deputy Rex had to threaten to spray Plaintiff with mace in order to remove him from the car. *Id.* at 4. All of this evidence supports a finding that a prudent person would believe Plaintiff had committed or was committing an offense of resisting and obstructing a police officer. *See* MCL 750.479 (prohibiting a person from knowingly or willfully obstructing an officer from acting in the performance of his or her duties); *Pyles*, 60 F.3d at 1215. Therefore, based upon the evidence presented, taken in a light most favorable to the non-moving Plaintiff, the Court concludes that Defendants possessed probable cause to arrest Plaintiff.

Finally, even absent a finding that summary judgment is appropriate with respect to the existence of probable cause to arrest Plaintiff, the Court finds that Defendants are entitled to summary judgment based upon qualified immunity on this issue. Under the doctrine of qualified immunity, government officials acting in their official capacities are protected from being sued in their individual capacities for damages if their actions did not "violate clearly established statutory

or constitutional rights of which a reasonable person would have known." *Greene v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In the context of arrests, the Supreme Court has made it very clear that the qualified immunity doctrine provides officers broad protection. In *Malley v. Briggs*, 475 U.S. 335 (1986), the Court, in reviewing a case where the plaintiffs alleged that probable cause was not established, as does the instant plaintiff, noted that the qualified immunity doctrine is "specifically designed to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.' " *Id*. at 341 (quoting *Harlow*, 457 U.S. at 818).

In *Hunter v. Bryant*, 502 U.S. 224 (1991), the Court reiterated the qualified immunity standard holding that the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id*. at 229 (quoting *Malley*, 475 U.S. at 341). Moreover, "*Hunter* established that the determination of whether qualified immunity applies to an officer's judgment as to probable cause is one for the court, not the jury, to make." *Greene*, 80 F.3d at 1104-05 (citing *Hunter*, 502 U.S. at 227-28). *See also Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988) ("The question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial.").

In the present case, the Court concludes that Defendants are entitled to qualified immunity. Under Michigan law, a person who knowingly fails to comply with a lawful command of an officer may be guilty of obstructing a police officer. *See* MCL 750.479(1), (8)(a). As the Court indicated above, Plaintiff admits that he did not immediately follow the orders of the deputies. A review of the in-car video unambiguously supports the proposition that the Deputies repeatedly and insistently

ordered Plaintiff to step out of the vehicle. Plaintiff continued to question Defendants about his rights and pleaded with them to explain those rights instead of complying with the deputies' lawful orders to exit the vehicle. Therefore, given the facts and the existing law, the Court is unable to conclude that Defendants were plainly incompetent or knowingly violated the law when they arrested Plaintiff. The fact that Plaintiff was ultimately acquitted of the charges has no effect on the determination as to whether the officers then had probable cause. *See Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988) (holding that a valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent) ( citing *United States v. Covelli*, 738 F.2d 847, 854 (7th Cir.), cert. denied, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984)). As a result, Defendants are entitled to qualified immunity on this claim.

Accordingly, for all the foregoing reasons, Defendants motion for summary judgment with respect to Plaintiff's claim that he was unlawfully seized and arrested without probable cause will be granted. The Court will next consider Plaintiff's claim regarding the excessive force applied by Deputy McVicar.

### B. Excessive Force

Plaintiff's next claim is that he was subject to excessive force while he was secured in the rear of Deputy Rex's patrol car. More specifically, Plaintiff alleges that while secured in Rex's vehicle, Deputy McVicar opened the car door, "leaned inside and forcefully shoved his billy club under [Plaintiff's] chin and stated, 'I'm going to kill you nigger.'" Pl's Resp., Ex 1. Aff. of Pl., p. 5. Plaintiff claims that as a result of this episode of being "beaten up," the officers violated his

constitutional right to be free from the use of excessive force. *Id.* at 6-7.

A court analyzing a claim of excessive force brought pursuant to 42 U.S.C. § 1983 recognizes that § 1983 "'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Consequently, a court's analysis "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id*. at 394. "[A]ll claims that involve excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id*. (emphasis in original). "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment...." *I*d.

The Fourth Amendment to the United States Constitution prohibits the use of excessive force when effecting an arrest. *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir.2005). The United States Supreme Court recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. at 396. However, a police officer's use of excessive force in executing an arrest may give rise to a claim by the victim under 42 U.S.C. § 1983. *Tennessee v. Gardner*, 471 U.S. 1(1985).

Examining the facts in a light most favorable to the non-moving Plaintiff, the Court

concludes that Defendants are entitled to summary judgment. The evidence indicates the total sum of the alleged "beating" amounts to a billy club "forcefully" pressed against Plaintiff and a threat of violence by one officer. The incident described by Plaintiff is isolated in nature and both very short and limited in duration. Although the alleged threat by the deputy, if substantiated, is disturbing, Plaintiff has failed to present any precedent in support of his claim that the deputy's actions amount to a constitutional violation.

Courts have generally held that gratuitous violence conducted against a suspect that has already been subdued may be considered excessive. *See Bultema v. Benzie County*, 146 Fed. Appx. 28, 34-35 (6th Cir. 2005)(suspect was pepper sprayed and hit in the head after being handcuffed); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1998)(finding unreasonable use of force where suspect allegedly suffered "two blows" from an officer's nightstick, breaking the suspects ribs); *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir.2002) (finding that an officer's tackling of a subdued suspect, striking him in the face twice, and then smashing his head on the floor multiple times, was clearly excessive). However, in the present case, Plaintiff asserts merely that the deputy forcefully *pressed* the billy club against him and directed a verbal threat towards Plaintiff. Plaintiff complained of no physical or emotional injuries and has refused to allow discovery of any medical records, claiming they are "irrelevant." Defs' Reply, Ex 5, 6. *See e.g.*, *Bella v. Chamberlain*, 24 F.3d 1251, 1257-58 (10th Cir. 1994)(comparing cases and stating, "we have never upheld an excessive force claim without some evidence of physical injury."). *Cf. McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)(finding that a claimant need not suffer a "*serious or permanent injury*" to establish a § 1983 claim)(emphasis added). Plaintiff has failed to direct the Court to any precedent that stands

for the proposition that merely pressing a billy club against him amounts to gratuitous violence. "Section 1983 does not provide a remedy for every intrusion by a police officer upon a citizen's bodily integrity." *Lewis v. Downs*, 774 F.2d 711, 713 (6th Cir. 1985)(abrogated on other grounds). The force used in this instance, Deputy McVicar's alleged pressing of a billy club against Plaintiff, falls well below the level of force contemplated in the Sixth Circuit cases finding constitutional violations. *See Bultema*, 146 Fed. Appx., at 34-35; *McDowell*, 863 F.2d at 1307; *Phelps*, 286 F.3d at 302. As a result, the Court finds that Defendant McVicar is entitled to summary judgment with respect to the allegation that McVicar pressed the billy club against Plaintiff in violation of Plaintiff's constitutional rights.

Finally, the alleged verbal threat, without more, is not cognizable as a § 1983 claim. *See Awdish v. Pappas*, 159 F. Supp. 2d 672, 678-79 (E.D. Mich. 2001) (A "policemen's mere display of a holstered weapon and verbal abuse of a suspect . . . do not violate the Forth Amendment." (citing *Collins v. Nagle*, 892 F.2d 489, 496-97) (6th Cir. 1989)); *Alder v. Anderson*, 2006 WL 1791338 at * 2 (E.D. Mich. June 27, 2006)(finding "allegations of harassment and verbal threats are insufficient to state a civil rights claim under § 1983").

## IV.    Conclusion

**ACCORDINGLY**, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry #19] is granted.

**SO ORDERED.**

Dated:   March 31, 2008                     s/Paul V. Gadola
                                            HONORABLE PAUL V. GADOLA
                                            UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   April 1, 2008  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:                    Cynthia L. Reach; Michael J. Sharpe                    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                              .

                                            s/Ruth A. Brissaud
                                            Ruth A. Brissaud, Case Manager
                                            (810) 341-7845

---